**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

|  |  |
|---|---|
| U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR THE REGISTERED HOLDERS OF WELLS FARGO COMMERCIAL MORTGAGE SECURITIES, INC., MULTIFAMILY MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2015-K46,<br><br>                              Plaintiff,<br><br>        vs.<br><br>318 EAST ASSOCIATES, LLC, DAVID AMIRIAN, ERIC BRODY, and "JOHN DOE" NO. 1 THROUGH "JOHN DOE" NO. 100, the names of the "John Doe" Defendants being Fictitious and Unknown to Plaintiff, the Persons and Entities Intended Being Those Who May Be in Possession of, or May Have Possessory Liens or Other Interests in, the Premises Herein Described,<br><br>                              Defendants. | Case No. 25-cv-_____ |

## VERIFIED COMPLAINT

Plaintiff U.S. Bank National Association, as Trustee ("**Trustee**") for the Registered Holders of Wells Fargo Commercial Mortgage Securities, Inc., Multifamily Mortgage Pass-Through Certificates, Series 2015-K46 (the "**Trust**") (Trustee, as trustee of the Trust, shall be referred to hereafter as "**Plaintiff**"), acting by and through Trimont, LLC ("**Trimont**" or "**Special Servicer**"), as Special Servicer under that certain Pooling and Servicing Agreement dated as of June 1, 2015 (the "**PSA**"), by and through its attorneys, Alston & Bird LLP, alleges and states its complaint as follows:

## NATURE OF ACTION

1.      This diversity action involves Plaintiff, acting by and through Trimont, acting solely in its capacity as Special Servicer, seeking, *inter alia*, the appointment of a receiver and to foreclose a mortgage on the certain real property and improvements located at and commonly

known as 316 East Third Street, New York, New York 10009, and more particularly described as Block 372, Lots 31 and 32 on the tax map of the Borough of Manhattan and the County, City, and State of New York and in **Exhibit 1** annexed hereto and made a part hereof (collectively, the "**Property**").

2.        On February 1, 2025, the Loan (as defined herein) reached maturity, yet Defendant 318 East Associates LLC ("**Borrower**") failed to repay all amounts due and owing on the Loan at the time it matured and at any time since then.  Borrower has also defaulted under the terms of its Loan by removing its manager without providing prior notice to Plaintiff or obtaining Plaintiff's consent prior to effectuating such removal.   Further, one of the original guarantors of Borrower's obligations under the Loan filed for bankruptcy, again without notifying or obtaining prior consent from Plaintiff, which constituted another default under the terms of the Loan.

3.        By this action, Plaintiff seeks, among other things, to foreclose the lien of the Mortgage (as defined herein), to foreclose the lien of the UCC-1 (as defined herein) on the Collateral (as defined herein), to take possession of the Property, to have a receiver appointed to manage the Property and collect the rents and profits generated therefrom during the pendency of this action, and to recover judgment against the Guarantors (as defined herein) to the extent a deficiency remains after the sale of the Property.

## PARTIES, JURISDICTION AND VENUE

4.        Trustee, acting solely in its capacity as trustee of the Trust, is a national banking association with its designated main office located in Cincinnati, Ohio.

5.        Plaintiff is the current holder of the note, mortgage and balance of the loan documents that are the subject of this action, with an address c/o Trimont, LLC, 550 S. Tryon Street, Suite 2400, Charlotte, North Carolina 28202.  Trimont, in its capacity as Special Servicer

LEGAL02/46547418v1

under the PSA, brings this action on Plaintiff's behalf.

6.     Section 2.01(a) of the PSA states that:

> It is the intention of the parties hereto that a common law trust be established under the laws of the State of New York pursuant to this Agreement and, further, that such trust be designated as the "FREMF 2015-K46 Mortgage Trust." U.S. Bank is hereby appointed, and does hereby agree to act, as Trustee hereunder and, in such capacity, to hold the Trust Fund in trust for the exclusive use and benefit of all present and future Certificateholders and the Guarantor within the meaning of Section 1367(b)(19)(B) of the Federal Housing Enterprises Financial Safety and Soundness Act of 1992, as amended. It is not intended that this Agreement create a partnership or a joint-stock association.

7.     Section 10.04(a) of the PSA provides that it shall be interpreted, enforced and governed by New York law.

8.     Because the Trust is a common law traditional trust, its citizenship for diversity jurisdiction purposes is determined by the citizenship of the Trustee.  Accordingly, because the Trustee is a citizen of Ohio, Plaintiff is also a citizen of Ohio.

9.     Upon information and belief, Defendant 318 East Associates LLC ("**Borrower**") is a limited liability company organized and existing under and by virtue of the laws of the State of New York having a principal place of business in New York, New York.

10.     Upon information and belief, Borrower's members are 318 Investors A LLC ("**318 Investors A**") and 318 Investors B, LLC ("**318 Investors B**"), each a New York limited liability company.  Upon information and belief, 318 Investor A's members are: (i) The Brody Group, LLC, a New York limited liability company whose sole member is Eric Brody, an individual domiciled in New York; (ii) Amirian Equities LLC, a New York limited liability company whose sole members is David Amirian, an individual domiciled in New York; and (iii) Parviz Khodadadian, an individual domiciled in New York.  Upon information and believe, 318 Investors B's members are Yaron Turgeman and Martin Klein, both of whom are individuals domiciled in

LEGAL02/46547418v1

New York.  Accordingly, Borrower is a citizen of New York.

11.     Borrower is joined as a party defendant herein because it is the obligor on the subject note and the mortgagor of the subject mortgage and for the purpose of extinguishing any interest that it has or may have in and to the Property.

12.     Upon information and belief, Defendant David Amirian ("**Amirian**") is an individual domiciled in New York with a residence in Great Neck, New York.

13.     Upon information and belief, Defendant Eric Brody ("**Brody**" and, together with Amirian, collectively, the "**Guarantors**") is an individual domiciled in New York with a residence in New York, New York.

14.     Guarantors are joined as party defendants herein because they guaranteed Borrower's obligations under the subject loan documents pursuant to that certain Guaranty dated as of January 28, 2015 (the "**Guaranty**") and to adjudicate any deficiency under the Loan Documents (as defined herein) for which they may be liable on account of their obligations under the Guaranty.

15.     John Doe No. 1 through John Doe No. 100, inclusive, are fictitious and unknown to Plaintiff and are named herein to designate any and all tenants, occupants, persons, corporations or other entities, if any, having or claiming an interest in or lien upon the Property or any part thereof, which is subject to the lien of the Mortgage (as defined herein).

16.     Based on the foregoing, this Court has diversity jurisdiction over the subject matter of this dispute pursuant to 28 U.S.C. § 1332(a) because it is a dispute between citizens of different states and, as described in Paragraphs 16-18, the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

17.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because the Property

LEGAL02/46547418v1

is situated in New York County, New York.

18.    Further, pursuant to the express terms of the Loan Documents (as defined herein), Borrower and Guarantors have irrevocably consented to the jurisdiction and venue of this Court.

## STATEMENT OF FACTS

### A.    The Loan and the Loan Documents

19.    Pursuant to that certain Multifamily Loan and Security Agreement dated as of January 28, 2015 (the "**Loan Agreement**"), executed by and between Borrower and M&T Realty Capital Corporation, a Maryland corporation (the "**Original Lender**"), Plaintiff's predecessor-in-interest, Original Lender made a loan to Borrower in the original principal amount of $13,000,000.00 (the "**Loan**").  A true and correct copy of the Loan Agreement is annexed hereto as **Exhibit 2** and made a part hereof.

20.    To evidence its indebtedness under the Loan, Borrower, *inter alia*, executed and delivered to Original Lender that certain Consolidated, Amended and Restated Multifamily Note Fixed Rate Defeasance dated as of January 28, 2015 (the "**Note**"), in favor of Original Lender, pursuant to which Borrower, *inter alia*, agreed to consolidate, amend and restate the Existing Notes (as defined in Exhibit A and described in Exhibit B of the Note) into a single debt in the principal amount of $13,000,000.00.

21.    Pursuant to the Note, Borrower agreed, *inter alia*, to pay to the order of Original Lender the sum of $13,000,000.00 plus interest at the rates set forth in the Note.  The Note is payable on the first day of each month (the "**Monthly Payment Date**") from March 1, 2015, until February 1, 2025 (the "**Maturity Date**"), at which time all unpaid principal, accrued and unpaid interest and all other amounts due under the Loan Documents (defined herein) (collectively, the "**Debt**"), were to be due and payable in full, unless earlier accelerated.  A true and correct copy of

the Note, with allonges affixed to it, is annexed hereto as **Exhibit 3** and made a part hereof.

22.     As collateral security for the payment of the Note, Borrower, *inter alia*, executed, acknowledged and delivered to Original Lender that certain Consolidation, Extension and Modification Agreement dated as of January 28, 2015 (the "**CEMA**"), pursuant to which Borrower, *inter alia*, agreed to amend, restate and consolidate the Existing Mortgages (as listed in Exhibit B-2 to the CEMA) into a single first priority lien on the Property in the original principal amount of $13,000,000.00. Exhibit C of the CEMA is a Multistate Mortgage, Assignment of Rents and Security Agreement dated as of January 28, 2015 (the "**Mortgage**"), executed by Borrower in favor of Original Lender and which granted Original Lender a security interest in the Property in the original principal amount of $13,000,000.00. A true and correct copy of the CEMA, including the Mortgage, is annexed hereto as **Exhibit 4** and made a part hereof.

23.     On February 20, 2015, Original Lender duly recorded the CEMA against the Property in the Office of the City Register of the City of New York (the "**City Register's Office**") as City Register File Number ("**CRFN**") 2015000058836 and duly paid the mortgage recording taxes.

24.     The Mortgage includes an assignment of leases and rents in favor of the holder of the Mortgage whereby the Borrower, *inter alia*, absolutely assigned to the holder of the Mortgage all existing and future Leases and Rents (as defined in the Mortgage). The Mortgage also conferred upon Borrower a revocable license to collect and retain the Rents as they become due and payable and not in advance (the "**License to Collect Rents**").

25.     The Mortgage also includes a security interest in favor of the holder of the Mortgage in, *inter alia*, all furniture, furnishings, fixtures, goods, equipment, inventory or personal property located on, attached to or used at the Property, and all building materials and equipment

situated at the Property, all warranties and guaranties relating thereto, and all additions thereto and substitutions and replacements therefor (the "**Collateral**"). The Collateral is more particularly described on **Exhibit 5** annexed hereto and made a part thereof.

26.    Also on or about January 28, 2015, to induce Original Lender to make the Loan and to further secure its repayment, Guarantors and Joseph Klaynberg ("**Klaynberg**") executed the Guaranty whereby they irrevocably and unconditionally guaranteed to Plaintiff and its successors and assigns the full, prompt and complete payment and performance of the certain obligations detailed therein, including, but not limited to, Sections 2 and 3 of the Guaranty (the "**Guaranteed Obligations**"), as and when the same shall be due and payable, whether by lapse of time, by acceleration of maturity or otherwise.   A true and correct copy of the Guaranty is annexed hereto as **Exhibit 6** and made a part hereof.

27.    The Loan Agreement, the Note, the Mortgage, the Guaranty, and all related loan documents shall be referred to collectively herein as the "**Loan Documents**."

**B.    Assignment of the Loan Documents to Plaintiff**

28.    Original Lender executed and delivered an Assignment of Mortgage dated as of January 28, 2015 (the "**First Assignment of Mortgage**"), in favor of Federal Home Loan Mortgage Corporation ("**FHLMC**").  By the Assignment of Mortgage, Original Lender transferred to FHLMC all rights, title and interest in and to the CEMA so that FHLMC became the holder of the CEMA entitled to all rights, title and interest in and to the CEMA.  The First Assignment of Mortgage was recorded on February 20, 2015 in the City Register's Office as CRFN 2015000058837.  A true and correct copy of the First Assignment of Mortgage is annexed hereto as **Exhibit 7** and made a part hereof.

29.    Original Lender also executed and delivered an allonge to the Note (the "**First**

**Allonge**") dated as of January 28, 2015, and bearing a special indorsement in favor of FHLMC, pursuant to which Original Lender transferred to FHLMC all of its rights, title and interest in and to the Note. By virtue of the First Allonge, which is firmly affixed by staple to the Note as to become a part thereof, FHLMC became the holder of the Note entitled to all rights, title and interest in and to the Note and the Loan. A true and correct copy of the First Allonge is annexed to the copy of the Note annexed hereto as **Exhibit 3** and made a part hereof.

30.    FHLMC executed and delivered an Assignment of Mortgage dated as of June 17, 2015 (the "**Second Assignment of Mortgage**"), in favor of Plaintiff. By the Second Assignment of Mortgage, FHLMC transferred to Plaintiff all rights, title and interest in and to the CEMA so that Plaintiff became the holder of the CEMA entitled to all rights, title and interest in and to the CEMA. The Second Assignment of Mortgage was recorded on June 29, 2015 in the City Register's Office as CRFN 2015000221488. A true and correct copy of the Second Assignment of Mortgage is annexed hereto as **Exhibit 8** and made a part hereof.

31.    FHLMC also executed and delivered an allonge to the Note (the "**Second Allonge**") dated as of June 17, 2015, bearing a special indorsement in favor of Plaintiff, pursuant to which FHLMC transferred to Plaintiff all of its rights, title and interest in and to the Note. By virtue of the Second Allonge, which is firmly affixed by staple to the Note as to become a part thereof, Plaintiff became the holder of the Note entitled to all rights, title and interest in and to the Note and the Loan. A true and correct copy of the Second Allonge is annexed to the copy of the Note annexed hereto as **Exhibit 3** and made a part hereof.

32.    As of the date of this Verified Complaint, Plaintiff, through its undersigned counsel, physically possessed the Note with the First and Second Allonges affixed to it by staple and is therefore the owner and holder of the Loan and the Loan Documents.

**C.**    **Borrower's Defaults Under the Loan Documents**

33.    Section 9.01 of the Loan Agreement defines the events that constitute an event of default under the Loan Documents (an "**Event of Default**").  Section 4 of the CEMA provides that the covenants and agreements of the CEMA are the terms of the Mortgage.  Section 8 of the Mortgage provides that an Event of Default under the Loan Agreement will constitute an Event of Default under the Mortgage.

34.    Section 9.01(a) of the Loan Agreement provides that it shall be an Event of Default if Borrower "fails to pay or deposit when due any amount required by the Note, this Loan Agreement or any other Loan Document."

35.    Section 9.01(f) of the Loan Agreement provides that it shall be an Event of Default if "[a] Transfer occurs that violates the provisions of Article VII, whether or not any actual impairment of Lender's security results from such Transfer."

36.    Section 9.01(p) of the Loan Agreement provides that it shall be an event of default if "[a] Guarantor files for bankruptcy protection under the Bankruptcy Code" unless such Guarantor (as defined in the Loan Agreement to mean Guarantors and Klaynberg) satisfies the following conditions:

> (i) Borrower or Guarantor provides Notice of such action to Lender within 30 days after the filing of such action.
>
> (ii) Either (A) the case is dismissed or discharged within 90 days after filing, or (B) within 90 days following the date of such filing or commencement, the affected Guarantor is replaced with one or more other Persons acceptable to Lender, in Lender's Discretion, each of whom executes and delivers to Lender a replacement Guaranty in form and content acceptable to Lender, together with such legal opinions as Lender deems necessary; provided, however, that if Lender determines, in Lender's Discretion, that any proposed replacement Guarantor is not acceptable, then the action will constitute a prohibited Transfer governed by Section 7.02.
>
> (iii) If Borrower must provide a replacement Guarantor pursuant to Section

9.0l(p)(ii), then Borrower pays the Transfer Processing Fee to Lender.
*See* Ex. 2, § 9.01(p).

37.     Pursuant to Section 3(h) of the Note, "[a]ll remaining Indebtedness, including all principal and interest, will be due and payable by Borrower on the Maturity Date." The Maturity Date is defined in Section 1 of the Note as February 1, 2025 unless the unpaid principal balance of the Note becomes earlier due and payable by acceleration or exercise of any other remedies available to Plaintiff under the Loan Documents.

38.     Article XII of the Loan Agreement defines "Indebtedness" as "the principal of, interest at the fixed or variable rate set forth in the Note on, and all other amounts due at any time under, the Note, this Loan Agreement or any other Loan Document, including prepayment premiums, late charges, default interest, and advances as provided in Section 9.02 to protect the security of the" CEMA and Mortgage.

39.     Borrower has failed repay the remaining Indebtedness on or before the Maturity Date of February 1, 2025, resulting in the occurrence of an Event of Default (the "**Maturity Event of Default**"), which is continuing.

40.     Section 7.02 of the Loan Agreement sets forth a list of Prohibited Transfers, the occurrence of any of which will constitute an Event of Default. Section 7.02(d) specifically provides that "[a] Transfer of . . . any manager interest (whether a member manager or nonmember manager) in a limited liability company)" shall constitute a Prohibited Transfer resulting in an Event of Default.

41.     Borrower notified Plaintiff that it had removed Klaynberg as its manager without first seeking or obtaining Plaintiff's consent to effectuating such removal. This Prohibited Transfer of the manager interest in the Borrower constitutes an Event of Default pursuant to Sections 7.02(d) and 9.01(f) of the Loan Agreement (the "**Transfer Event of Default**").

LEGAL02/46547418v1

42.     Borrower also notified Plaintiff that Klaynberg, one of the original guarantors of the Loan and an obligee under the Guaranty, filed for bankruptcy protection in the United States Bankruptcy Court for the Southern District of New York.

43.     Klaynberg commenced his bankruptcy action, captioned *In re Joseph Klaynberg*, 22-bk-10165 (the "**Guarantor Bankruptcy**"), on February 11, 2022.  Because Klaynberg, Borrower and Guarantor all failed to satisfy any of the conditions set forth in Section 9.01(p) of the Loan Agreement at any time after the commencement of the Guarantor Bankruptcy, Klaynberg's bankruptcy constitutes another Event of Default (the "**Bankruptcy Event of Default**" and, together with the Maturity Event of Default and the Transfer Event of Default, collectively, the "**Events of Default**").

44.     By letter dated February 24, 2025 (the "**Notice of Default**"), Plaintiff, by and through its previous special servicer, Wells Fargo Bank, National Association, *inter alia*, notified Borrower, Guarantors and Klaynberg of the Maturity Event of Default, Transfer Event of Default, and Bankruptcy Event of Default.  Plaintiff also demanded in the Notice of Default that Borrower immediately cure the Maturity Event of Default by paying to Plaintiff all amounts currently due under the Loan and Loan Documents.  A true and correct copy of the Notice of Default is annexed hereto as **Exhibit 9** and made a part hereof.

45.     Despite the demands made in the Notice of Default, Borrower has failed to cure the Maturity Event of Default.

46.     Further, despite the provision in Section 3(b)(i) of the Mortgage that, from and after the occurrence of an Event of Default, Borrower's License to Collect Rents shall automatically terminate and Plaintiff shall be entitled to all rents as they become due and payable, including rents then due and unpaid, Borrower has not remitted any rents to Plaintiff since the occurrence of the

first Event of Default known to Plaintiff.

**D.    Plaintiff's Remedies Under the Loan Documents**

47.    The Loan Agreement states that upon the occurrence and during the continuance of an Event of Default Plaintiff may "exercise any or all of its rights and remedies provided under the Loan Documents and Borrower will pay all costs associated therewith, including Attorneys' Fees and Costs." *See* Ex. 2, § 9.03(a).

48.    The Note provides in Section 8(a) that "[s]o long as . . . (ii) any other Event of Default has occurred and is continuing, . . . interest under this Note will accrue on the unpaid principal balance from . . . the occurrence of such other Event of Default, as applicable, at the Default Rate." *See* Ex. 3, § 8(a).

49.    Section 1 of the Note defines the "Default Rate" as "an annual interest rate equal to 4 percentage points above the Fixed Interest Rate" and the "Fixed Interest Rate" as an annual interest rate of 3.53%. *See* Ex. 3, § 1.

50.    Accordingly, because of the Bankruptcy Event of Default, interest on the Loan began accruing at the Default Rate of 7.53% as of February 11, 2022.

51.    The Loan Documents provide that upon the occurrence and during the continuation of any Event of Default, Plaintiff may, in addition to Plaintiff's other rights and remedies under the Loan Documents, at law and in equity, apply for the appointment of a receiver for the Property, without notice to Borrower, which notice Borrower expressly waived, regardless of the adequacy of Plaintiff's security and without regard to Borrower's solvency, and that Borrower expressly consented to the appointment of such receiver to take possession of and to operate the Property and to collect the rents and to otherwise protect and preserve the Property. *See* Ex. 4, Ex. C § 3(c)(ii).

52.     The Loan Documents further provide that Borrower shall be liable for all Attorneys' Fees and Costs, which is defined in the Loan Agreement and the Mortgage as "(i) fees and out of pocket costs of Lender's and Loan Servicer's attorneys, as applicable, including costs of Lender's and Loan Servicer's in-house counsel, support staff costs, costs of preparing for litigation, computerized research, telephone and facsimile transmission expenses, mileage, deposition costs, postage, duplicating, process service, videotaping and similar costs and expenses; (ii) costs and fees of expert witnesses, including appraisers; (iii) investigatory fees; and (iv) costs for any opinion required by Lender pursuant to the terms of the Loan Documents." *See* Ex. 2, Art. XII; Ex. 4, Ex. C § 1.

53.     Specifically, Section 9.03(a) of the Loan Agreement, Section 13 of the Note, and Section 31(c) of the Mortgage obligate Borrower to pay all of Plaintiff's Attorneys' Fees and Costs in connection with any Events of Default occurring under any of the Loan Documents.

## FIRST COUNT
### (Mortgage Foreclosure)

54.     Plaintiff repeats and incorporates herein the allegations contained in Paragraphs 1 through 53 above, as if the same were set forth and repeated at length herein.

55.     The Note, Mortgage, and all other Loan Documents constitute valid and enforceable contracts between Plaintiff and Borrower.

56.     Plaintiff at all relevant times, performed its obligations under the Loan Documents.

57.     Borrower materially breached its obligations under the Loan Documents as a result the Events of Default, to wit: (i) failing to repay the remaining Indebtedness on or before the Maturity Date of February 1, 2025; (ii) effectuating a Prohibited Transfer without seeking or obtaining Plaintiff's consent by removing Klaynberg as its manager; and (iii) failing to satisfy the conditions set forth in Section 9.01(p) of the Loan Agreement at any time prior to or after the

13

commencement of the Guarantor Bankruptcy.

58.    Despite Plaintiff's demand in the Notice of Default that Borrower cure the Maturity Event of Default, Borrower has still failed to repay the outstanding Indebtedness.  Accordingly, all of the Events of Default alleged herein remain uncured and are continuing.

59.    Section 31(a) of the Mortgage provides that, upon the occurrence and during the continuance of any Event of Default, Plaintiff shall have the right to, among other remedies, "foreclose this Instrument by judicial or nonjudicial proceedings."  Ex. 4, Ex. C § 31(a).

60.    As a result of the Payment Events of Default there is now due, owing and payable to Plaintiff under the Loan Documents: (i) $11,112,957.50 in principal; (ii) accrued and unpaid interest at the Interest Rate and the Default Rate; (iii) Attorneys' Fees and Costs; and (iv) all other sums provided for under the Loan Documents.

61.    To protect the lien and security represented by the CEMA and Mortgage during the pendency of this foreclosure action, Plaintiff may be compelled to pay insurance premiums, taxes, assessments, water charges, sewer charges, attorneys' fees, repairs and other expenses or charges affecting the Property.  Plaintiff asks that any amount so incurred during the pendency of this foreclosure action, along with any other applicable fees, costs and advances incurred, be added, pursuant to the Mortgage and the Loan Documents, to its claim and be repaid to Plaintiff from the proceeds of the sale of the Property, together with interest thereon from the date that such expenditures are made, and that the same be added to the amounts due Plaintiff and secured by the Mortgage and the Loan Documents.

62.    Any interest or lien which any defendant herein has, or may claim to have, in or upon the Property, or any part thereof, is subject and subordinate to the lien of the Mortgage.

63.    No other action or proceeding has been brought to recover any part of the mortgage

indebtedness herein described.

**WHEREFORE**, Plaintiff demands judgment against the defendants as follows:

a.  Adjudging and decreeing the amounts due it as demanded in this Verified Complaint by means of Borrower's default under the Loan Documents;

b.  Adjudging and decreeing that the defendants herein, all persons claiming under them, and all persons making any claim against the Property which are the subject of this foreclosure action subsequent to the filing of the notice of pendency of this action be barred and foreclosed of and from any and all estate, right, title, interest, claim, lien and equity of redemption of, in and to the Property and each and every part and parcel thereof;

c.  Adjudging and decreeing that (a) the Property may be decreed or sold, according to law, subject to a statutory right of redemption in the United States of America, if any, subject to taxes, assessments, water charges and sewer rents, subject to any state of facts an accurate, currently dated survey would disclose, subject to zoning ordinances and local regulations, and subject to all mortgages, conditions, restrictions, liens, encumbrances, rights and interests, if any, that may be prior to the liens of the Loan Documents; (b) that the Property may be sold in one or more parcels and in such order as determined by Plaintiff; (c) that the money resulting from said sale be brought into court; and (d) that Plaintiff be paid (1) the expenses of said sale, (2) the costs, allowances, and disbursements of this action, (3) the amounts due on the notes and mortgages, together with interest and late payment charges thereon as provided therein to the time of such payment, (4) all money advanced or paid by Plaintiff pursuant to any term or provision of any exhibit forming a part of this complaint, or to protect the liens of the Mortgages or the Property, (5) Plaintiff's expenses of collection, including reasonable attorneys' fees, and (6) all other charges and liens, with interest upon said amounts from the dates of the respective payments or advances all so far as the amount of money properly applicable thereto will pay the same;

d.  Adjudging and decreeing that Borrower be adjudged to pay any deficiency remaining under the Loan Documents after the application of the monies as aforesaid in accordance with Section 1371 of the New York Real Property Actions and Proceedings Law;

e.  Adjudging and decreeing that Plaintiff shall not be deemed to have waived, altered, released or changed the election hereinbefore made, by reason of any payment after the commencement of this action, of any or all of the defaults mentioned herein, and such election shall continue and remain effective;

f.  Adjudging and decreeing that in the event that Plaintiff possesses any other

lien(s) against the Property either by way of judgment, junior mortgage or otherwise, Plaintiff requests that such other lien(s) shall not be merged in Plaintiff's cause of action set forth in this Complaint, but that Plaintiff shall be permitted to enforce said other lien(s) and/or seek determination of priority thereof in any independent action(s) or proceeding(s), including, without limitation, any surplus money or deficiency proceedings; and

g.    Adjudging and decreeing that Plaintiff be granted such other and further relief as may be just and equitable.

## SECOND COUNT
### (Possession)

64.    Plaintiff repeats and incorporates herein the allegations contained in Paragraphs 1 through 63 above, as if the same were set forth and repeated at length herein.

65.    By the terms of the Note, Mortgage, and other Loan Documents and by reason of Borrower's Events of Default under the terms of the Loan Documents, Plaintiff is entitled to immediate possession of the Property and Collateral together with all improvements and appurtenances described in the Mortgage and in this Verified Complaint.

66.    Defendants are now in possession of the Property and Collateral and have deprived or may deprive Plaintiff of possession of the Property and Collateral.

**WHEREFORE**, Plaintiff demands judgment against the Defendants as follows:

a.    Granting Plaintiff, its assignee, or the purchaser of the Property and Collateral at the foreclosure sale possession of the Property and Collateral;

b.    Awarding Plaintiff damages for mesne profits;

c.    Awarding Plaintiff its costs of suit, including reasonable attorneys' fees and costs; and

d.    Awarding such other and further relief as the Court may deem just and proper.

## THIRD COUNT
### (Security Interest Foreclosure)

67.    Plaintiff repeats and incorporates herein the allegations contained in Paragraphs 1 through 66 above, as if the same were set forth and repeated at length herein.

16

68.     To perfect its interest in the Collateral, on February 12, 2015, FHLMC recorded a Uniform Commercial Code Financing Statement (the "**County UCC-1**") in the City Register's Office as CRFN 2015000058838.  A true and correct copy of the County UCC-1 is annexed hereto as part of **Exhibit 10** and made a part hereof.

69.     By Uniform Commercial Code Financing Statement Amendment dated June 17, 2015, FHLMC assigned the County UCC-1 to Plaintiff (the "**First County UCC-3**").  On June 29, 2025, the First County UCC-3 was recorded in the City Register's Office as CRFN 2015000221489.  A true and correct copy of the First County UCC-3 is annexed hereto as part of **Exhibit 10** and made a part hereof.

70.     By Uniform Commercial Code Financing Statement Amendment dated September 18, 2019, Plaintiff continued the County UCC-1 for another five years  (the "**Second County UCC-3**").  On September 23, 2019, the Second County UCC-3 was recorded in the City Register's Office as CRFN 2019000307246.   A true and correct copy of the Second County UCC-3 is annexed hereto as part of **Exhibit 10** and made a part hereof.

71.     By Uniform Commercial Code Financing Statement Amendment dated September 12, 2024, Plaintiff continued the County UCC-1 for another five years  (the "**Third County UCC-3**").  On September 17, 2024, the Third County UCC-3 was recorded in the City Register's Office as CRFN 2024000242608.  A true and correct copy of the Third County UCC-3 is annexed hereto as part of **Exhibit 10** and made a part hereof.

72.     To further perfect its interest in the Collateral, on February 13, 2025, FHLMC filed a Uniform Commercial Code Financing Statement (the "**State UCC-1**") with the New York Department of State ("**NY DOS**") as File No. 201502130073273.  A true and correct copy of the State UCC-1 is annexed hereto as part of **Exhibit 11** and made a part hereof.

73.     By Uniform Commercial Code Financing Statement Amendment filed with NY DOS on June 19, 2015 (the "**First State UCC-3**") as File No. 201506198239615, FHLMC assigned the State UCC-1 to Plaintiff.  A true and correct copy of the First State UCC-3 is annexed hereto as part of **Exhibit 11** and made a part hereof.

74.     By Uniform Commercial Code Financing Statement Amendment filed with NY DOS on September 18, 2019 (the "**Second State UCC-3**") as File No. 201909186188262, Plaintiff continued the State UCC-1 for another five years.  A true and correct copy of the Second State UCC-3 is annexed hereto as part of **Exhibit 11** and made a part hereof.

75.     By Uniform Commercial Code Financing Statement Amendment filed with NY DOS on September 12, 2024 (the "**Third State UCC-3**") as File No. 202409126275191, Plaintiff continued the State UCC-1 for another five years.  A true and correct copy of the Third State UCC-3 is annexed hereto as part of **Exhibit 11** and made a part hereof.

76.     When Borrower executed the Mortgage, it granted a valid and enforceable security interest in the Collateral.

77.     Plaintiff holds a duly perfected security interest in the Collateral by virtue of the Mortgage, the Assignments of Mortgage, the County UCC-1, the County UCC-3s, the State UCC-1, and the State UCC-3s.

78.     Pursuant to the terms of the Loan Documents, Plaintiff elects to have the Collateral sold by the sheriff together with the Property at a single public sale.

79.     No person or entity possesses an interest in the Collateral superior to the security interest held by Plaintiff.

**WHEREFORE**, Plaintiff demands judgment against the defendants as follows

     a.     Adjudging that the Collateral be sold together with the Property at a single public sale conducted by the sheriff to satisfy the amounts due to Plaintiff;

b.  Barring and foreclosing the defendants of all equity of redemption in and to the Collateral;

c.  Granting Plaintiff its costs of suit, including reasonable attorneys' fees; and

d.  Awarding such other and further relief as the Court may deem just and proper.

## FOURTH COUNT
### (Receiver)

80.     Plaintiff repeats and incorporates herein the allegations contained in Paragraphs 1 through 79 above, as if the same were set forth and repeated at length herein.

81.     Borrower has breached the Loan Documents and has allowed the Maturity Event of Default, Transfer Event of Default, and Bankruptcy Event of Default to occur and remain uncured.

82.     Section 3(b)(iii) of the Mortgage provides that "[f]rom and after the occurrence of an Event of Default, and during the continuance of such Event of Default, and without the necessity of Lender entering upon and taking and maintaining control of the Mortgaged Property directly, or by a receiver, Borrower's license to collect Rents will automatically terminate and Lender will without Notice be entitled to all Rents as they become due and payable, including Rents then due and unpaid." *See* Ex. 4, Ex. C § 3(b)(iii).

83.     Despite the occurrence and continuation of the numerous Payment Events of Default, Borrower has failed to comply with its obligations under the Loan Documents by not, *inter alia*, delivering any Rents to Plaintiff, directing Tenants to remit future Rents to Plaintiff or providing Plaintiff with an accounting of all Rents collected since the occurrence of the first of the Payment Events of Default known to Plaintiff.

84.     Further, certain of Borrower's Events of Default, specifically the Transfer Event of Default and the Bankruptcy Event of Default, has created uncertainty surrounding Borrower's and

Guarantors' financial stability and the value of Plaintiff's security for the Loan – the Property and

the Collateral.

85.     Section 3(c)(ii) of the Mortgage provides that

if an Event of Default has occurred and is continuing, regardless of the adequacy of Lender's security, without regard to Borrower's solvency and without the necessity of giving prior notice (oral or written) to Borrower, Lender may apply to any court having jurisdiction for the appointment of a receiver for the Mortgaged Property to take any or all of the actions set forth in the preceding sentence. **If Lender elects to seek the appointment of a receiver for the Mortgaged Property at any time after an Event of Default has occurred and is continuing, Borrower, by its execution of this Instrument, expressly consents to the appointment of such receiver, including the appointment of a receiver *ex parte* if permitted by** applicable law.

*See* Ex. 4, Ex. C § 3(c)(ii) (emphasis added)

86.     The appointment of a receiver is necessary to protect and preserve the value of

Plaintiff's security because of the likelihood of Plaintiff's interests in the Property and Collateral

being irreparably harmed should the Borrower continue to manage the Property in the way it has

since the occurrence of the first of the Payment Events of Default known to Plaintiff.

**WHEREFORE**, Plaintiff demands judgment against the defendants as follows

a.     Appointing a receiver to collect the rents and manage the Property;

b.     Directing all tenants in possession of the Property to pay the receiver all rents;

c.     Granting Plaintiff its costs of suit, including reasonable attorneys' fees; and

d.     Awarding such other and further relief as the Court may deem just and proper.

## <u>FIFTH COUNT</u>
### (Breach of Guaranty in the Event of a Deficiency)

87.     Plaintiff repeats and incorporates herein the allegations contained in Paragraphs 1

through 86 above, as if the same were set forth and repeated at length herein.

88.    Plaintiff seeks judgment on the Guaranty solely in the event of a deficiency judgment against the Borrower. As such, this claim contingent upon the existence of such a deficiency and only then ripe for adjudication.

89.    In order to induce Original Lender to make the Loan to Borrower, Guarantors and Klaynberg executed, acknowledged and delivered to Original Lender the Guaranty.

90.    Pursuant to Section 2(a)(i)(B) of the Guaranty, Guarantors and Klaynberg absolutely, unconditionally and irrevocably guaranteed to Plaintiff "all amounts for which Borrower is personally liable under Sections 9(c), 9(d) and 9(f) of the Note." *See* Ex. 6, § 2(a)(i)(B).

91.    Section 9(c) of the Note provides, in relevant part, that "Borrower will become personally liable to Lender for the repayment of a further portion of the Indebtedness equal to any loss or damage suffered by Lender as a result of the occurrence of any of the following events: (i) Borrower fails to pay to Lender upon demand after an Event of Default all Rents to which Lender is entitled under 'Section 3 of the Security Instrument and the amount of all security deposits collected by Borrower from tenants then in residence."

92.    Moreover, in the Guaranty, Guarantors and Klaynberg guaranteed "all costs and expenses, including reasonable Attorneys' Fees and Costs incurred by Lender in enforcing its rights under this Guaranty." *See* Ex. 6, § 2(a)(i)(C).

93.    Plaintiff is the current holder of the Loan Documents, including the Guaranty.

94.    Because of the Guarantor Bankruptcy, Plaintiff cannot currently puruse claims under the Guaranty against Klaynberg, leaving only Guarantors Amirian and Brody jointly and severally liable to Plaintiff under the Guaranty.

95.    Pursuant to Section 9(c) of the Note and Section 2(a)(i)(B) of the Guaranty,

Guarantors are personally liable and obligated to the Plaintiff for any rents that are not delivered to Plaintiff in accordance with the Loan Documents.

96.    No other action or proceeding has been brought to recover any part of the mortgage indebtedness herein described.

WHEREFORE, Plaintiff demands judgment against defendants as follows:

a.    Fixing the amount due to Plaintiff from Guarantors jointly and severally pursuant to the Guaranty and any other applicable Loan Documents;

b.    Adjudging that Plaintiff is entitled to be paid by Guarantors the amounts due pursuant to the Guaranty, with interest, advances, other charges, attorneys' fees and costs; and

c.    Awarding such other and further relief as the Court may deem just and proper.

Respectfully submitted,

Dated: New York, New York
       August 22, 2025

**ALSTON & BIRD LLP**

By: */s/ Richard J. Galati, Jr.*
    Richard J. Galati, Jr. (RG0884)
    John P. Doherty
    90 Park Avenue
    New York, New York 10016
    (212) 210-9400
    richard.galati@alston.com
    john.doherty@alston.com

*Attorneys for Plaintiff U.S. Bank National Association, as Trustee for the Registered Holders of Wells Fargo Commercial Mortgage Securities, Inc., Multifamily Mortgage Pass-Through Certificates, Series 2015-K46*

LEGAL02/46547418v1

## <u>VERIFICATION</u>

I, Michael Farrell, Managing Director of Trimont, LLC, special servicer for Plaintiff, hereby verify that I have authorized the filing of this Verified Complaint, that I have reviewed the allegations made in the Verified Complaint, that I know the contents thereof, and that they are true to my knowledge, except as to matters alleged on information and belief, and as to those matters I believe them to be true.  I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 22, 2025

_____
MICHAEL FARRELL

23